UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:22-CV-00140-GNS-HBB

LAURIE SYLVESTER; and
RICHARD FULKERSON                                                                               PLAINTIFFS

v.

SAFECO INSURANCE COMPANY OF
AMERICA                                                                                                DEFENDANT

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on Plaintiffs' Objection (DN 44) to the Magistrate Judge's Order (DN 33) and Plaintiffs' Motion to Compel Appraisal (DN 46). For the reasons that follow, the objection is **OVERRULED**, and the motion is **GRANTED**.

### I.     BACKGROUND

Plaintiffs Laurie Sylvester and Richard Fulkerson (jointly "Plaintiffs") own real property in Hopkins County, Kentucky that was insured by a property insurance policy with Defendant Safeco Insurance Company of America ("Safeco"). (Compl. ¶¶ 5-6, DN 1-1). Plaintiffs suffered tornado damage to their property and made a claim with Defendant. (Compl. ¶¶ 8-9). Safeco accepted coverage but paid an amount that Plaintiffs allege is insufficient to cover the full value of their loss. (Compl. ¶ 10). Plaintiffs initiated this action in Hopkins Circuit Court (Kentucky), asserting claims for breach of contract and violation of KRS 304.12-230. (Compl. ¶¶ 13-28). Defendant removed the action to this Court under 28 U.S.C. § 1332. (Notice Removal 1-5, DN 1).

After some email communications, the parties had a conference and submitted a joint discovery plan pursuant to Fed. R. Civ. P. 26(f) agreeing Plaintiffs' statutory claims should be

1

bifurcated and stayed while the parties resolved the breach of contract claims. (Joint Rule 26(f) Report 2, DN 12). The parties also indicated that they may be able to resolve through appraisal Plaintiffs' breach of contract claim relating to "disputes over the amount of covered loss to certain property for which Safeco previously issued payments . . . ." (Joint Rule 26(f) Report 2).

A scheduling order was put in place that set a January 16, 2023, deadline for Plaintiffs' expert disclosures. (Scheduling Order 5, DN 17). Plaintiffs disclosed one expert on January 16 and attempted to serve an amended expert disclosure on February 21 identifying a second expert, Jason Juday ("Juday"). (Order 2, DN 33). Safeco moved to strike the amended disclosure and exclude the newly disclosed expert; Plaintiffs moved to extend their expert disclosure deadlines. (Def.'s Mot. Strike & Exclude, DN 21; Pls.' Mot. Extension, DN 22). The Magistrate Judge granted Safeco's motions and denied Plaintiffs' motion. (Order 15, DN 33). The instant objection and motion to compel appraisal followed. (Pls.' Obj., DN 44; Pls.' Mot. Compel Appraisal, DN 46 [hereinafter Pls.' Mot. Appr.]).

## II. JURISDICTION

The Court has subject-matter jurisdiction over this action through diversity jurisdiction because there is complete diversity between the parties and the amount in controversy exceeds the sum of $75,000.00. *See* 28 U.S.C. § 1332.

## III. DISCUSSION

### A. Plaintiffs' Objection (DN 44)

#### 1. *Standard of Review*

Under Fed. R. Civ. P. 72(a), upon timely objection to a magistrate judge's order, the district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "This standard requires the District Court to review findings of fact

2

for clear error and to review matters of law de novo." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017)). "A [factual] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (alteration in original) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). An order is "contrary to the law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* (internal quotation marks omitted) (quoting *United States v. Winsper*, No. 3:08-CV-631-H, 2013 WL 5673617, at *1 (W.D. Ky. Oct. 17, 2013)).

        2.     *Analysis*

Plaintiffs argue that the Magistrate Judge made several inaccurate factual findings and ruled contrary to law by striking their amended expert disclosures and excluding Juday. (Pls' Obj. 5-6).

        a.     **Factual Inaccuracies**

Plaintiffs first object to seven assertions contained within the Magistrate Judge's order that they argue wrongly characterize the parties' communications. Plaintiffs initially contest the order's characterization that "Plaintiffs emphatically rejected" Safeco's first memorandum of appraisal. (Pls.' Obj. 6-7). They assert that their letter rejecting appraisal was not in response to Safeco's proposed memorandum of appraisal but instead was sent independently. (Pls.' Obj. 6-7).

On December 22, 2022, both parties' counsel sent emails to one another almost simultaneously—first, an email from Safeco's counsel with a proposed memorandum of appraisal followed one minute later by an email containing a letter from Plaintiffs' counsel rejecting appraisal. (*See* Pls.' Mot. Extension Ex. 4, DN 22-4 (email from Safeco's counsel with the proposed memorandum of appraisal, sent December 22, 2022, at 12:44 PM); Pls.' Obj. Ex. 1, at 1,

3

DN 44-1 (email from Plaintiffs' counsel with attached letter rejecting appraisal, sent December 22, 2022, at 12:45 PM)). Safeco's counsel then acknowledged that the parties' emails may have "crossed paths" in a later email. (Pls.' Obj. Ex. 1, at 1). Reviewing the emails, the Order seems to have misinterpreted these communications and that Plaintiffs did not send their letter rejecting appraisal in response to Safeco's memorandum of appraisal. Overall, however, that appears to be of little consequence.

Plaintiffs' next three objections all relate to their insistence that Safeco acted in bad faith by feigning agreement to an appraisal plan while actually intending to litigate the issues. (Pls.' Obj. 7-8). As the Magistrate Judge observed, Plaintiffs' argument that Safeco acted in bad faith ignores Plaintiffs' email stating that they believed litigation would be necessary on all claims. (Pls.' Mot. Extension Ex. 1, at 4, DN 22-1 [hereinafter Nov. Emails]). Later, Plaintiffs asserted in an email to the Court that "Plaintiffs have objected to appraisal from the outset." (Def.'s Resp. Pls.' Mot. Extension Ex. 1 at 1, DN 23-1). Even now, Plaintiffs refuse to offer any explanation for the dissonance between these emails and their current position, and instead assert that they have been working towards appraisal from the beginning. (*See* Pls.' Obj. 2-4, 7-8). The Magistrate Judge made no error with respect to his descriptions of the parties' communications.

Plaintiffs' final two objections relate to the Magistrate Judge's assertion that Plaintiffs did not provide Juday with materials necessary to formulate his opinions until twenty-one days after their expert disclosure deadline. (Pls.' Obj. 8-9). The Magistrate Judge acknowledged that Plaintiffs had sent information for Juday to prepare his report in November, but pointed out that they did not request information from Juday for their disclosure of his opinions, nor send Juday an engineering report necessary for his opinion until February 6, 2023. (Order 5-9, DN 33; *see* Def.'s

4

Resp. Pls.' Mot. Extension Ex. 6, at 3, DN 24-6). The Magistrate Judge was not mistaken regarding these facts.

In conclusion, Plaintiffs are correct that the Magistrate Judge appears to have misconstrued one factual detail relating to the parties' communications. Nevertheless, as explained below, the Magistrate Judge still had proper bases for his conclusions.

### b. Legal Conclusions

Plaintiffs argue that the Magistrate Judge made a clear error of law in striking their amended Fed. R. Civ. P. 26 disclosures, excluding their expert Juday, and denying leave for an extension of their expert disclosure deadline. (*See* Pl.'s Obj. 14). Fed. R. Civ. P. 26(a)(2)(A) provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence" as an expert witness. Rule 26(a)(2)(B) requires that the disclosure of retained experts must be accompanied by a written report that contains:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

Fed. R. Civ. P. 37(c)(1) states:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) "'puts teeth' into the Rule 26 provisions . . . ." *Campos v. MTD Prods., Inc.*, No. 2:07-CV-00029, 2009 WL 2252257, at *9 (M.D. Tenn. July 24, 2009) (citations omitted); *accord Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998). Rule 37(c)(1) "mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *Vance ex rel. Hammons v. United States*, 182 F.3d 920, 1999 WL 455435, at *3 (6th Cir. 1999) (unpublished table decision) (internal footnote omitted) (citation omitted). Rule 37(c)(1) "contemplates strict[] adherence to discovery requirements, and harsh[] sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion." *Id.*; *see also Roberts ex rel. Johnson v. Galen of Va. Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) ("Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a) . . . ." (citation omitted)). The Sixth Circuit has noted that the advisory committee notes to the 1993 amendment, which included passage of Rule 37(c)(1), "strongly suggest[] that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015) (alteration in original) (quoting *Vance*, 1999 WL 455435, at *5).

In *Howe*, the Sixth Circuit instructed courts to consider the following five factors to determine whether a discovery violation is "substantially justified" or "harmless":

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)). "District courts have broad discretion in applying these factors and need not apply each one rigidly. The factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating honest, harmless mistakes from the type of underhanded gamesmanship that warrants the harsh remedy of

6

exclusion." *Bisig*, 940 F.3d at 219 (internal quotation marks omitted) (quoting *Bentley v. Highlands Hosp. Corp.*, No. 15-97-ART-EBA, 2016 WL 5867496, at *10 (E.D. Ky. Oct. 6, 2016)).

After applying *Howe*, the Magistrate Judge concluded that Plaintiffs' failure to abide by the scheduling order was neither substantially justified nor harmless. (Order 15, DN 33). Therefore, the Court must consider, *de novo*, whether their late disclosure was either substantially justified or harmless such that it may avoid exclusion under Rule 37(c)(1). *See Bisig*, 940 F.3d at 219 ("Thus, whether the magistrate judge failed to apply *Howe* is a legal question that the district court was required to review de novo." (footnote omitted)).

### i. Surprise

Plaintiffs attempt to downplay the surprise caused by the late disclosure of Juday and his opinions by explaining that Safeco already knew that Juday would be providing an estimate which would relate to the same loss as Safeco's estimate and include the same dimensions for the home. (Pls.' Obj. 11-12). Plaintiffs state, "Where the parties differ on this issue is related to method of repairs and associated costs." (Pls.' Obj. 12). Juday's opinions on the method of repairs and associated costs are clearly the most important parts of his opinions with respect to the disputed valuation, and failing to provide the report containing those opinions until long after the deadline clearly caused surprise. Therefore, this factor weighs in favor of Safeco.

### ii. Ability to Cure

No trial date has been set in this case. Therefore, in theory, surprise to Safeco could be cured through an extension of deadlines and the reopening of discovery as needed. Such a solution, however, "would . . . reward [Plaintiffs] for [their] untimeliness and suggest that deadlines bend to a party's will." *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-CV-150-JMH-REW, 2017 WL 2295906, at *4 (E.D. Ky. May 25, 2017) (quoting *Bentley*, 2016 WL 5867496, at *10).

7

While Plaintiffs have since supplied an amended expert report, the discovery deadlines are too long past. (Pls.' Obj. Ex. 4, DN 44-4; Sched. Order 5). This could have been avoided if they had simply moved for an extension prior to the expiration of the deadline. This factor weighs in favor of Safeco.

### iii. Trial Disruption

As with the previous factor, no trial date has been set and the Court could, in theory, extend deadlines and reopen discovery as needed without needing to reschedule a trial, but doing so would naturally delay the resolution of this action. By failing to seek leave to extend their disclosure deadline prior to its running, Plaintiffs have significantly prolonged this litigation. Therefore, this factor weighs in favor Safeco.

### iv. Importance of the Evidence

"On its own, this factor can cut both ways. 'The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure.'" *Bisig*, 940 F.3d at 220 (quoting *EQT Prod.*, 2017 WL 2295906, at *5). As the Magistrate Judge noted, Juday's opinions are clearly important to Plaintiffs' claims. (Order 14, DN 33). Therefore, this factor weighs in their favor, although only slightly.

### v. Plaintiffs' Explanation

In their original response to Safeco's Motion to Strike, Plaintiffs stated: "The main explanation is that the dispute regarding damage to the property other than the foundation is no longer being resolved through the appraisal process as the discovery plan and Scheduling Order contemplated." (Pls.' Resp. Def.'s Mot. Strike 8, DN 24). The Court agrees with the Magistrate Judge's conclusion that this explanation "is impossible to square with Plaintiffs' multiple assertions in emails to both the Court and [Defendant]'s counsel that they never agreed to the

8

appraisal process." (Order 14, DN 33). Plaintiffs, despite their internal communications with Juday evidencing an intent to go through appraisal, repeatedly told Safeco that they wanted to resolve the claims through litigation. (*See* Pls.' Obj. Ex. 2, at 1-11, DN 44-2; Nov. Emails 4). If Plaintiffs had some strategic reason for expressing a preference for litigation, they should have also been ready to actually litigate their claims within the Court's deadlines, or at least moved for an extension of deadlines as their plans changed. While not charging Plaintiffs with "underhanded gamesmanship," in light of their apparent lack of candor regarding their position on appraisal, the Court cannot deem their untimeliness an "honest, harmless mistake[]." *Bisig*, 940 F.3d at 219 (internal quotation marks omitted) (quoting *Bentley*, 2016 WL 5867496, at *10). Therefore, this factor weighs in favor of Safeco.

### vi. Conclusion

Based on the foregoing, the Magistrate Judge was correct in finding that Plaintiffs' late disclosure was neither substantially justified nor harmless. Therefore, Plaintiffs' objection to the Magistrate Judge's Order is overruled.

### B. Plaintiff's Motion to Compel Appraisal (DN 46)

Plaintiffs also move the Court to compel the appraisal provision within the policy. (Pls.' Mot. Appr. 1; *see* Notice Removal Ex. A (PageID # 52), DN 1-1). In relevant part, the policy provides:

> If you and we do not agree on the amount of loss, including the amount of ***actual cash value*** or ***replacement cost***, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the ***actual cash value*** or ***replacement cost*** of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in

writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

Each party will:
a. pay its own appraiser; and
b. bear the other expenses of the appraisal and umpire equally.

(Notice Removal Ex. A (PageID # 52)). Safeco opposes the motion arguing that: (1) Plaintiffs have failed to identify an authority pursuant to which the Court may compel an appraisal; (2) they have expressly waived their right to an appraisal; and (3) they have impliedly waived their right to an appraisal. (Def.'s Resp. Pls.' Mot. Compel Appraisal 1-2, DN 51 [hereinafter Def.'s Resp. Appr.]).

### 1. *The Court's Authority*

Safeco argues that the Court lacks the authority to compel appraisal because Plaintiffs did not state a claim to enforce the appraisal provision in the Complaint. (Def.'s Resp. Appr. 6-10). Plaintiffs cite to three cases, two from this Court and one from the Eastern District, in which the court compelled appraisal to support the notion that such relief is appropriate here. (Pls.' Mot. Appr. 6 (citing *Motorists Mut. Ins. Co. v. Post*, No. 04-487-JBC, 2005 WL 2674987, at *4 (E.D. Ky. Oct. 20, 2005); *Bachelor Land Holdings, LLC v. Chubb Custom Ins. Co.*, No. 3:11-CV-152, 2011 WL 5389197, at *6 (W.D. Ky. Nov. 4, 2011); *Woods Apartments, LLC v. U.S. Fire Ins. Co.*, No. 11-41-C, 2012 WL 12996188, at *1 (W.D. Ky. May 30, 2012)). Safeco distinguishes these cases by arguing that in each of them, the plaintiffs had specifically sought to compel appraisal in their complaints, whereas here the Complaint does not explicitly seek to compel, nor even mention,

10

appraisal.[1]  (Def.'s Resp. Appr. Ex. B, DN 51-2; Def.'s Resp. Appr. Ex. C, DN 51-3; Def.'s Resp. Appr. Ex. D, DN 51-4).

Oddly, neither party mentioned *Ball v. Liberty Mutual Group Inc.*, No. 5:22-179-DCR, 2022 WL 21304646 (E.D. Ky. Sept. 27, 2022).[2]  There, the court considered a defendant insurance company's motion to compel appraisal pursuant to an appraisal provision with almost identical terms to the one at issue here.  *Id.* at *1; (*see* Notice Removal Ex. A (PageID # 52)).  Although the court noted that the lack of any response from the plaintiff was a factor in granting the motion, the court also reasoned that,

> An insurance policy is a contract and is governed solely by its terms.  Paragraph 6 of the Policy makes clear that, if the parties disagree regarding the amount of loss, either may demand an appraisal.  The plain language of this provision indicates that once a party has invoked the right to appraisal, the other party is required to participate.

*Id.* at *2 (internal citation omitted).  The court also noted that "[a]s a general matter, public policy favors alternate resolution procedures like the appraisal process."  *Id.* (alteration in original) (quoting *Post*, 2005 WL 2674987, at *4).  The amount determined in the appraisal was later used as the basis for summary judgment.  *See Ball v. Liberty Mut. Grp. Inc.*, No. 5:22-179-DCR, 2023 WL 6961557, at *2 (E.D. Ky. Oct. 20, 2023).

While, like the other cases cited by the parties, *Ball* does not discuss limitation of the Court's authority, it presents the most factually similar circumstance:  a party seeking to compel appraisal based on a largely identical policy provision.  *See Ball*, 2022 WL 21304646, at *1-2.  Like in *Ball*, the policy here contemplates that either party may require the other to participate in

---

[1] While not expressly demanding an appraisal in the Complaint, Plaintiffs did demand "[a]ll other relief considered by this Honorable Court to be reasonable and appropriate." (Compl. 4).
[2] Attorneys of record in *Ball* were identical to the counsel of record in the instant case.  *See Ball*, 2023 WL 6961557.

11

appraisal to determine the amount of loss. (Notice Removal Ex. A (PageID # 52)). Accordingly, Safeco's argument that this Court lacks the authority to compel an appraisal is not well-taken.

           **2.**     *Waiver*

Safeco also argues that Plaintiffs waived, expressly and impliedly, their right to compel an appraisal. (Def.'s Resp. 6-10). Under Kentucky law, a waiver is a "voluntary and intentional surrender of a known right, or an election to forego an advantage . . . ." *Temple v. Temple*, 298 S.W.3d 466, 469 (Ky. App. 2009) (alteration in original) (quoting *Vinson v. Sorrell*, 136 S.W.3d 465, 469 (Ky. 2004)). "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." *Morgan v. Sundance*, 596 U.S. 411, 417 (2022). "[Waiver] may be express, or it may be implied from the conduct of a party." *Clift v. RDP Co.*, 200 F. Supp. 3d 660, 672 (W.D. Ky. 2016) (citing *Bates v. Grain Dealers Nat'l Mut. Fire Ins. Co.*, 283 S.W.2d 3, 5 (Ky. 1955)).

Throughout the parties' communications, Plaintiffs expressed an intent to decline appraisal and resolve the case through litigation. First, in emails discussing the parties' Fed. R. Civ. P 26(f) report, Plaintiffs' counsel relayed that, "Given the exten[t] of the coverage issues I believe the entire dispute should be handled in litigation." (Nov. Emails 4). In the same email chain, Plaintiffs' counsel later softened this position, saying, "We are willing to reconsider our position regarding appraisal if we can agree on a Memorandum of Appraisal including procedure and questions to be appraised." (Nov. Emails 1). Later, in their a joint report the parties stated that "[t]he parties believe that other disputes, particularly disputes over the amount of covered loss to certain property for which Safeco previously issued payments, might be resolved through a private appraisal process as provided in the Policy." (Joint Rule 26(f) Report 2).

12

As explained above, on December 22, 2022, Plaintiffs' counsel emailed a letter rejecting appraisal one minute after Safeco sent an email with a proposed memorandum of appraisal. (*See* Pls.' Mot. Extension Ex. 4; Pls.' Obj. Ex. 1, at 1). Plaintiffs' counsel sent an additional letter on January 3, 2023, reiterating his clients' unwillingness to go through appraisal. (Def.'s Mot. Strike Pls.' Am. Expert Disclosures Ex. 4, DN 21-4 [hereinafter Pl.'s Jan. 3 Letter]). In that letter, Plaintiffs' counsel even asserted that Safeco had waived its right to appraisal by failing to promptly produce a memorandum of appraisal. (Pl.'s Jan. 3 Letter).

Plaintiffs argue that their conduct was prompted by Safeco's bad faith, consisting of its conduct in serving "extensive written discovery specifically on topics the parties agreed to resolve in appraisal . . . ." (Pls.' Mot. Appr. 3). As explained above regarding Plaintiffs' objections to the Magistrate Judge's order, the Court finds no evidence that Safeco acted in bad faith through its conduct in this case. Regardless, while Plaintiffs trod close to waiving their right to demand an appraisal, the Court finds that they did not commit such a waiver, either explicitly or impliedly. The effect of Plaintiffs' initial statement that they believed litigation was the appropriate forum for all of their claims is undercut by their subsequent agreement to the Rule 26(f) report stating that the parties believed some of their claims could be resolved in appraisal. (Joint Rule 26(f) Report 2). Plaintiffs' subsequent letters both indicate frustration with the lack of progress the parties had made towards submitting their claims to appraisal, especially the first letter, which was apparently sent before Plaintiffs' counsel was aware that Safeco had sent a proposed memorandum of appraisal. (Pls.' Obj. Ex. 1, at 1). Plaintiffs' counsel's communications with Juday reveal that Plaintiffs were expecting Juday to participate in the appraisal process until February 1, 2023, when Plaintiffs' counsel informed Juday that Safeco had advised him that it no longer wished to participate in the appraisal. (Pls.' Obj. Ex. 2, at 1-11). Considering all of these communications

together it appears that, despite some statements to the contrary, Plaintiffs contemplated at least some of their claims might proceed through appraisal as the parties indicated in their joint Rule 26(f) report. (*See* Joint Rule 26(f) Report 2).

It is significant that the Magistrate Judge, who has dealt more intimately with the parties, clearly believed that appraisal was still an option when he considered the motion to strike and exclude. (Order 15, DN 33 ("The undersigned is aware that this is a harsh sanction, however, the severity of the sanction is tempered by the fact that Plaintiffs still have the ability to present the evidence in the context of the appraisal process provided in the contract of insurance.")). Accordingly, Plaintiffs' valuation claims should proceed through appraisal as required by the insurance policy. (Joint Rule 26(f) Report 2; Notice Removal Ex. A (PageID # 52)). Thus, this motion is granted, and the parties are ordered to appoint appraisers and comply with the appraisal process as described in the insurance policy.

## IV. CONCUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel Appraisal (DN 46) is **GRANTED**, and Plaintiffs' Objection to the Magistrate Judge's Order (DN 44) is **OVERRULED**.

Greg N. Stivers, Chief Judge
United States District Court

February 6, 2024

cc: counsel of record